Approved: _____
          JULIANA N. MURRAY
          Assistant United States Attorney

Before:   THE HONORABLE KEVIN NATHANIEL FOX
          United States Magistrate Judge
          Southern District of New York

**21 MAG 10839**

- - - - - - - - - - - - - - - - - - - -X
                                      :

UNITED STATES OF AMERICA        :

                                      :
        - v. -                   :
                                      :

UWEMEDIMO UMOREN,           :

                                      :
                  Defendant.    :
                                      :
- - - - - - - - - - - - - - - - - - - -X

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 371,
1349, and 1956(h)

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    GREGORY W. HOLM, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("USSS"), and charges as follows:

### COUNT ONE
### (Conspiracy to Commit Wire Fraud)

    1.   From at least in or about 2015 through at least in or about September 2020, in the Southern District of New York and elsewhere, UWEMEDIMO UMOREN, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

    2.   It was a part and an object of the conspiracy that UWEMEDIMO UMOREN, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and

sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
**(Conspiracy to Receive Stolen Money)**

3. From at least in or about 2015 through at least in or about September 2020, in the Southern District of New York and elsewhere, UWEMEDIMO UMOREN, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, a violation of Title 18, United States Code, Section 2315.

4. It was a part and object of the conspiracy that UWEMEDIMO UMOREN, the defendant, and others known and unknown, would and did receive, possess, conceal, store, barter, sell, and dispose of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, in violation of Title 18, United States Code, Section 2315.

OVERT ACT

5. In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

    a. On or about April 11, 2016, UWEMEDIMO UMOREN, the defendant, received a $5,000 teller transfer from an investment scam victim ("Victim-1") that was sent from a bank located in New York, New York into a bank account located in the state of Georgia.

(Title 18, United States Code, Section 371.)

## COUNT THREE
**(Money Laundering Conspiracy)**

6. From at least in or about 2015 through at least in or about September 2020, in the Southern District of New York and elsewhere, UWEMEDIMO UMOREN, the defendant, and others known and

2

unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

7. It was a part and object of the conspiracy that UWEMEDIMO UMOREN, the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8. I am a Special Agent with the USSS and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of report and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Overview of the Conspiracy

9. Since in or about 2018, the USSS has been investigating a criminal enterprise (the "Enterprise") based in Nigeria that committed a series of frauds against individuals and businesses located across the United States, including in the Southern District of New York. The frauds perpetrated by the Enterprise consisted of various email fraud scams, including business email compromise and romance scams.

a. The Enterprise conducted business email compromise scams using fraudulent email accounts. Specifically, the Enterprise sometimes used email addresses in the names of third parties known to victims to trick victims into thinking the fake email accounts were authentic. The fake email accounts were then used to send instructions to the victims to wire money to certain bank accounts. By using this method of deception, the Enterprise sought to trick the victims into transferring hundreds of thousands of dollars to bank accounts the victims believed were under the control of legitimate recipients of the funds as part of normal business operations, when in fact the bank accounts were under the control of members of the Enterprise.

b. The Enterprise conducted romance scams by using electronic messages sent via email, text messaging, and online dating websites that tricked the victims — many of whom were vulnerable, older men and women who lived alone — into believing that they were in romantic relationships with fake identities assumed by members of the Enterprise. Once members of the Enterprise had gained the trust of the victims using the fake identities, they used false pretenses – such as claiming that they needed financial assistance to secure investment opportunities - in order to cause the victims to wire money to bank accounts the victims believed were controlled by their romantic interests, when in fact the bank accounts were controlled by members of the Enterprise. The members of the Enterprise, posing as the romantic interests of the victims, also introduced the victims to other individuals purporting to be, for example, consultants, lawyers, or bank employees, who then used false pretenses to cause the victims to wire money to bank accounts controlled by members of the Enterprise.

c. UWEMEDIMO UMOREN, the defendant, is a naturalized United States citizen. UMOREN and other members of the Enterprise received fraud proceeds from victims into a series of at least eight bank accounts at seven different banks that UMOREN controlled ("Account-1" through "Account-8," collectively, the "Ufmens Accounts"), as further described below. UMOREN opened the Ufmens Accounts in the name of his company, Ufmens, Inc. dba Ufmens Vehicles Parts & Sales ("Ufmens"), in order to further conceal the proceeds of the fraud scheme. Once UMOREN received the fraud proceeds in bank accounts under his control, he withdrew, transported, and laundered those fraud proceeds to other members of the Enterprise.

4

### Scheme to Defraud Victim-1

10. Based on the USSS's investigation of an investment scam involving an 81-year-old man ("Victim-1"), as well as my conversations with Victim-1, I have learned the following, in substance and in part:

   a. In or about 2016, Victim-1 received a telephone call from an individual ("Individual-1") regarding a purported investment opportunity that Individual-1 said could generate a $5 million return for Victim-1.

   b. Individual-1 subsequently directed Victim-1 to deposit money into various bank accounts and provided account details. Victim-1 estimates having transferred approximately $3.5 million into various bank accounts over several years, at the direction of Individual-1.

   c. On or about April 11, 2016, at a bank in Manhattan, Victim-1 transferred approximately $5,000 to UWEMEDIMO UMOREN, the defendant, into one of the Ufmens Accounts (Account-3) as part of the alleged investment opportunity with Individual-1.

   d. The money that Victim-1 sent at the direction of Individual-1 was never returned to Victim-1, and Victim-1 never received any return from the purported investment opportunity.

### Scheme to Defraud Victim-2

11. Based on the USSS's investigation of an investment scam involving a 69-year-old man ("Victim-2"), as well as my conversations with Victim-2, I have learned the following, in substance and in part:

   a. In or about 2018, Victim-2 was contacted by a real estate broker ("Individual-2") regarding a purported real estate development project.

   b. Individual-2 told Victim-2, in substance and in part, that Individual-2 and others (together with Victim-2, the "Investors") were in negotiations to obtain a purported $300 million investment loan to fund the alleged development project.

   c. Individual-2 had been in contact with an alleged broker in Bahrain who claimed to know an investor in Jordan with

$300 million that would be the source of funds for the alleged investment loan.

        d.    A purported Saudi Arabian attorney involved with the alleged investment loan put the Investors in touch with an individual ("Individual-3") who claimed to work in the Paris office of a United Kingdom-based company and offered to assist in getting the alleged $300 million investment loan released from Jordan to the United States.

        e.    Individual-3 told the Investors, in substance and in part, that the $300 million investment loan had been transferred from a Jordanian bank via various other financial institutions to a particular French bank ("French Bank-1"), into a French Bank-1 account in Victim-2's name.

        f.    In or about October 2019, Victim-2 and another of the Investors traveled to Paris and met in person with Individual-3 and another person purporting to be a bank officer from French Bank-1.  During the meeting, Individual-3 stated, in substance and in part, that the Investors needed to pay a particular company to have the $300 million loan proceeds authenticated and released to the United States.

        g.    Between at least in or about October 2019 and in or about January 2020, based upon the above representations made by Individual-3, and other purported individuals that worked with Individual-3, Victim-1 wired approximately $770,000 to bank accounts identified by Individual-2 and others.  On or about January 30, 2020, Victim-2 wired approximately $30,000 to UWEMEDIMO UMOREN, the defendant, to another of the Ufmens Accounts (Account-1).

        h.    The money that Victim-2 sent at the direction of Individual-3 and others was never returned to Victim-2, and Victim-2 never received any return from the purported investment opportunity.

### Scheme to Defraud Victim-3

    12.    Based on the USSS's investigation of a romance scam involving a 74-year-old man ("Victim-3"), as well as my conversations with Victim-3, I have learned the following, in substance and in part:

        a.    Victim-3 entered into an online relationship with a purported female individual ("Individual-4"), who claimed to

be an interior decorator who had secured a contract to work on a yacht in Anchorage, Alaska.

  b. Individual-4 told Victim-3, in substance and in part, that Individual-4 required funds to cover a bid error she had made relating to the yacht project.

  c. From on or about August 5, 2020 through on or about August 10, 2020, based upon the above representations made by Individual-4, Victim-3 wired approximately $100,000 to UWEMEDIMO UMOREN, the defendant, to a third of the Ufmens Accounts (Account-2).

  d. The money that Victim-3 sent at the direction of Individual-4 was never returned to Victim-3.

### Scheme to Defraud Victim-4

13. Based on the USSS's investigation of a scam involving a 73-year-old woman ("Victim-4"), as well as my conversations with other law enforcement officers who interviewed Victim-4, I have learned the following, in substance and in part:

  a. Victim-4 developed an association with a male individual online ("Individual-5") who told Victim-4, in substance and in part, that Individual-5 had bid on a contract in Dubai that would pay $1.5 million in profits, but that Individual-5 had frozen his own bank accounts in advance of traveling overseas. Individual-5 requested Victim-4's financial assistance in funding tasks for the contract and told Victim-4, in substance and in part, that Victim-4 would be repaid and receive a profit as a result of Victim-4's investment.

  b. Between in or about March 2019 and June 2019, based upon the above representations made by Individual-5, and other purported individuals that worked with Individual-5, Victim-4 wired over approximately $80,000 to UWEMEDIMO UMOREN, the defendant, to Account-1.

  c. The money that Victim-4 sent at the direction of Individual-5 was never returned to Victim-4.

### Scheme to Defraud Victim-5

14. Based on the USSS's investigation of a scam involving a 74-year-old man ("Victim-5"), as well as my conversations with

7

Victim-5 and my review of law enforcement reports, I have learned the following, in substance and in part:

    a. In or about January 2017, Victim-5 received a message on a social media platform that appeared to be from a former co-worker ("Individual-6"), which contained details of an alleged investment opportunity for senior citizens. Victim-5 submitted an application for the purported investment opportunity.

    b. Thereafter, Victim-5 was contacted by another individual ("Individual-7") who advised Victim-5 that Victim-5 could double his money through the alleged investment opportunity. Individual-7 directed Victim-5 to send tens of thousands of dollars to various bank accounts.

    c. Between at least in or about February 2017 and March 2017, based upon the above representations made by Individual-7, Victim-5 transferred approximately $341,000 to UWEMEDIMO UMOREN, the defendant, via deposits to Account-3.

    d. The money that Victim-5 sent at the direction of Individual-7 was never returned to Victim-5, and Victim-5 never received any return from the purported investment opportunity.

<u>Summary of the Ufmens Accounts</u>

15. Based on my review of bank records, I have learned the following, in substance and in part:

    a. From at least in or about April 2015 through at least in or about October 2021, UWEMEDIMO UMOREN, the defendant, held at least 14 bank accounts at 11 different banks in the state of Georgia.

    b. As described above, at least eight of those accounts (*i.e.*, the Ufmens Accounts) were opened in the name of Ufmens, UMOREN's company, at banks insured by the Federal Deposit Insurance Corporation. UMOREN is sole the signatory on Account-1, Account-2, and Accounts-4 through -7. UMOREN's wife is also a signatory on Account-3 and Account-8. The primary signatory on Account-8 is "Ufmens Inc."

    c. As described above: (i) Victim-2 and Victim-4 both sent funds to Account-1; (ii) Victim-3 sent funds to Account-2; and (iii) Victim-1 and Victim-5 both sent funds to Account-3.

    d. Between in or about April 2015 and on or about September 30, 2020, the Ufmens Accounts received deposits greater than approximately $500 that totaled approximately $7 million, and withdrawals greater than approximately $500 that totaled approximately $6.9 million.  The majority of the deposits consisted of large wire transfers from various individuals, including Victims-1 through -5.

    e. UMOREN made representations to the banks regarding the alleged purpose of the Ufmens Accounts.  For example:

      i. In the account opening documentation for Account-1, UMOREN described the nature of Ufmens as "SALES USED CARS AND SPARE PARTS."  As described above, Victim-2 sent funds to Account-1, which funds Victim-2 believed to be intended to facilitate the release of an alleged $300 million real estate investment loan.  *See* ¶ 11.  As further described above, Victim-4 sent funds to Account-1, which funds Victim-4 believed to be intended to fund contractual tasks being performed in Dubai.  *See* ¶ 13.

      ii. In the account opening documentation for Account-2, UMOREN described the nature of Ufmens' business as "[b]uying and shipping of used vehicles and parts."  As described above, Victim-3 sent funds to Account-2, which funds Victim-3 believed to be intended to fund a yacht interior decorating project in Anchorage, Alaska.  *See* ¶ 12.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of UWEMEDIMO UMOREN, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

                s/Gregory W.Holm by KNF, USMJ
                GREGORY W. HOLM
                Special Agent
                United States Secret Service

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
10th day of November, 2021

*Kevin Nathaniel Fox*
_____
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK